Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

KENNETH R. KUPCHAK            1085-0
krk@hawaiilawyer.com
BETHANY C.K. ACE             8469-0
bcka@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI  96813
http://www.hawaiilawyer.com
Telephone:  (808) 531-8031
Facsimile:   (808) 531-2242

Attorneys for Plaintiff
HUAPALA SENIOR CARE E, LLC

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 31 2012

at 2 o'clock and 45 min. P.M.
SUE BEITIA, CLERK

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HUAPALA SENIOR CARE E, LLC,<br>Hawaii Limited Liability Company, | ) Civil No. CV12  00588  RLP<br>) (Housing/Accommodation)<br>) |
| Plaintiff, | ) **COMPLAINT; DEMAND FOR**<br>) **JURY TRIAL; SUMMONS** |
| vs. | )<br>) |
| CITY AND COUNTY OF HONOLULU,<br>HAWAII; CITY AND COUNTY OF<br>HONOLULU DEPARTMENT OF<br>PLANNING AND PERMITTING;<br>DIRECTOR OF CITY AND COUNTY<br>OF HONOLULU DEPARTMENT OF<br>PLANNING AND PERMITTING; CITY<br>AND COUNTY OF HONOLULU<br>DEPARTMENT OF<br>ENVIRONMENTAL SERVICES; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DIRECTOR OF COUNTY OF )
HONOLULU DEPARTMENT OF )
ENVIRONMENTAL SERVICES; and )
JOHN DOES 1-10, JANE DOES 1-10, )
DOE GOVERNMENT ENTITIES 1-10; )
DOE CORPORATIONS 1-10, DOE )
PARTNERSHIPS 1-10, and DOE )
ENTITIES 1-10, )
)
           Defendants. )
————————————————— )

## COMPLAINT

Plaintiff HUAPALA SENIOR CARE E, LLC, a Hawaii Limited Liability Company ("Senior Care" or "Plaintiff"), alleges and avers against Defendants CITY AND COUNTY OF HONOLULU, HAWAII ("County"); CITY AND COUNTY OF HONOLULU DEPARTMENT OF PLANNING AND PERMITTING ("Permitting"); DIRECTOR OF CITY AND COUNTY OF HONOLULU DEPARTMENT OF PLANNING AND PERMITTING ("Permitting Director"); CITY AND COUNTY OF HONOLULU DEPARTMENT OF ENVIRONMENTAL SERVICES ("Environmental Services"); DIRECTOR OF COUNTY OF HONOLULU DEPARTMENT OF ENVIRONMENTAL SERVICES ("Environmental Services Director"); and JOHN DOES 1-10, JANE DOES 1-10, DOE GOVERNMENT ENTITIES 1-10; DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, and

176785/4

DOE ENTITIES 1-10 ("Doe Defendants" and collectively with all other defendants, "Defendants") as follows:

## INTRODUCTION; JURISDICTION AND VENUE

1.     This action concerns Senior Care's thwarted attempts to develop an adult residential care facility (the "Residence Project") for the disabled elderly (in which the elderly tenants will live on a permanent/indefinite basis) on Senior Care's property situated at 2649 Huapala Street, Honolulu, Hawaii 96822, identified by Tax Map Key Number (1) 2-9-20-068 (the "Property").   The intended residents of the Resident Project (the "Doe Residents") want to live in Manoa and have insufficient options to live in this area in the absence of the Residence Project.   Despite this need, Senior Care has been unable to get the necessary ministerial permits from the Defendants.   Defendants have prevented Senior Care from obtaining the necessary permits, *inter alia*, by improperly and illegally withholding wastewater services (*i.e.*, a connection for each dwelling to the public sewer).   Defendants lack discretion to withhold such ministerial approvals.   There is no inadequacy in the sewer system, and even if there were an inadequacy during peak flow hours, Senior Care has provided a holding tank proposal to address such an inadequacy.   At the very least, Defendants have demonstrated that they are unwilling to make reasonable accommodations (which must be made under the FHA, ADA, and/or Rehabilitation Act, defined below).   And

3

176785/4

when viewing Defendants' actions *en toto*, it appears that Defendants (and/or its constituents) do not want this type of facility in Manoa. Defendants have reneged on earlier approvals, inappropriately delayed action, invented new obstacles to development (obstacles for which they could never provide rationale), applied existing policies in an arbitrary and capricious manner to refuse to grant necessary permits, and/or refused to grant reasonable accommodations requested (even to the fictitious obstacles imposed by Defendants). Defendants' behavior violated numerous federal laws, state laws, and the U.S. Constitution. Senior Care prays for declaratory and injunctive relief compelling Defendants to cease their discrimination and issue all necessary approvals for this development to proceed, as well as monetary damages, attorneys' fees and any other relief deemed appropriate by this Court.

2.     This Court has jurisdiction of the federal claims asserted here pursuant to 28 U.S.C. § 1331, to 28 U.S.C. § 1337 and to 28 U.S.C. § 1343. Senior Care is an aggrieved person and its claims arise under the 5th and 14th Amendments of the United States Constitution (the "U.S. Constitution"), 42 U.S.C. § 1983 and 42 U.S.C. §§ 3601-3619 (the federal Fair Housing Act of 1968, as amended; collectively, "FHA"), 42 U.S.C. §§ 12101-12213 (the federal Americans with Disabilities Act of 1990, as amended; "ADA"), and 29 U.S.C. §§ 701- 797b (the federal Rehabilitation Act of 1973, as amended; "Rehabilitation Act"). This Court has supplemental

4

jurisdiction of all other claims raised herein pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy under Article III of the U.S. Constitution and arise from the same facts and circumstances.

3.      This Court has *in personam* jurisdiction over Defendants because Defendants are all residents of the District of Hawaii (political subdivisions and agents within the State of Hawaii) and Defendants' unlawful practices complained of occurred within this District.  Venue is proper pursuant to 28 U.S.C. § 1391(b).

4.      This Court is empowered to grant declaratory relief, injunctive relief, and/or monetary damages in favor of Senior Care, as well as its attorneys' fees, for the claims raised herein pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, the FHA (specifically, 42 U.S.C. § 3613(c)), the ADA (specifically, 42 U.S.C. § 12188), the Rehabilitation Act, (specifically, 29 U.S.C. 29 U.S.C. § 194a), and Rules 54, 57, 58 and 65 of the Federal Rules of Civil Procedure.

## PARTIES; RESIDENCY; CAPACITY

5.      Senior Care is a Hawaii limited liability company doing business in the State of Hawaii and owns the Property.  Senior Care is the developer and intended operator of the Residence Project.

6.      Senior Care is informed and believes, and on that basis alleges, that the County at all times relevant was, and now is a subdivision of the State of Hawaii

176785/4

and is an incorporated municipality whose boundaries and powers are governed under the Charter of Honolulu, as revised (the "Charter").  Per Section 2-102 of the Charter, all County powers "shall be used to serve and advance the general welfare, health, happiness, safety and aspirations of its inhabitants, present and future, and to encourage their full participation in the process of governance."

7.     Senior Care is informed and believes, and on that basis alleges, that Permitting at all times relevant was, and now is a department and agent of County and is responsible for County's long-range planning, community planning efforts, administration and enforcement of ordinances and regulations governing the development and use of land, various codes pertaining to the construction of buildings, and County standards and regulations pertaining to infrastructure requirements, including issuing land use approvals, zoning and land use permits, construction and building permits and engineering and subdivision permits.

8.     Permitting Director is the acting director of Permitting and named solely in such official capacity.  As of the date of filing this complaint, Jiro A. Sumada is the Permitting Director.  Permitting Director is described by official title, rather than by name, as permitted under Fed. R. Civ. P. 17(d).  Permitting Director is an official and agent of County, administering his duties within the District of Hawaii.

6

9.      Senior Care is informed and believes, and on that basis alleges, that Environmental Services at all times relevant was, and now is a department and agent of County.  Its functions include, without limitation, the collection and treatment of wastewater and the management of the wastewater systems of County.

10.      Environmental Services Director is the acting director of Environmental Services and named solely in such official capacity.  As of the date of filing this complaint, Tim Steinberger is the Environmental Services Director.  Environmental Services Director is described by official title, rather than by name, as permitted under Fed. R. Civ. P. 17(d).  Environmental Services Director is an official and agent of County, administering his duties within the District of Hawaii.

11.      Doe Defendants are persons (male or female), entities, organizations, or any agency, board, commission, department, or officer of County's government or the State of Hawaii's government and are named herein under fictitious names for the reason that their true names and identities or liability to Senior Care is presently unknown to Senior Care except that they are connected in some manner with the named Defendants, their agents, principals, servants, representatives, co-venturers, associates consultants, shareholders, officers, directors, aiders and abettors and/or are liable to Senior Care for the injuries alleged herein.  Senior Care has made diligent efforts to ascertain the names and identities of these persons and/or entities.  Senior

176785/4

Care prays leave to amend this Complaint to show the true names, capacities, activities and/or responsibilities when the same have been ascertained.

12.    At all times herein mentioned, each and every Defendant herein was the agent, board member, servant, employee, partner and/or joint venturer of the other Defendants herein; at all said times, each of said Defendants was actually or purporting to act within the course and scope of such relationship and to duly exercise its duties and/or discretion.

13.    Each of the Defendants is responsible, and liable, jointly and severally, for the actions and/or omissions alleged herein for the serious injury and deprivation of rights caused to Senior Care because of the relationships described in paragraph 12 above.

### GENERAL ALLEGATIONS
#### (Senior Care Intends to Use its Residential Property for Care Homes for the Disabled Elderly)

14.    The development and operation of residential care homes for the elderly disabled are reasonable and necessary to afford disabled people equal opportunity to use and enjoy housing.

15.    Specifically, Senior Care is informed and believes, and on that basis alleges, that there is a specific need and desire of the disabled elderly for additional housing opportunities in Manoa, including Doe Residents.

8

176785/4

16.     The Property is located in an R-7.5 residential zone and is approximately 53,317 square feet (1.22 acres).  The zoning and Land Use Ordinance (Revised Ordinances of Honolulu Chapter 21) permit up to seven detached residential dwellings on the Property (a single one-family dwellings for each lot on the Property with a minimum lot area of 7,500 square feet).  Revised Ordinances of Honolulu ("R.O.H") §§ 12 21-3.70, -3.70-1 and Table 21-3.2.

17.     Senior Care contemplates constructing the Residence Project on the Property as essentially four separate single-family homes for eight tenants and two staff members, in which each of the elderly tenants resides in their own bedroom, but share common kitchen and other household facilities within the home.  Senior Care would construct the four care homes (the "Care Homes"); the existing dwelling would not be used as a Care Home.

18.     At each of the Care Homes there would be persons employed to provide necessary care and assistance to these elderly residents with their daily living activities, such as preparation of meals.

19.     The intended residents of the Care Homes, including Doe Residents, would be the elderly who are "disabled" or "handicapped" as defined by the FHA, ADA, and Rehabilitation Act because they need assistance with everyday

176785/4

activities due to their age-related impairments or limitations, such as bathing and preparation of meals.

20.     Each of the Care Homes would be a Type II "adult residential care home" ("ARCH"), as defined and established by Hawaii Revised Statutes § 321-15.6, because they each will have eight elderly residents occupying each Care Home, plus on-site caregivers.

21.     For purposes of zoning and the Land Use Ordinance (R.O.H. Chapter 21), the elderly residents of each Care Home constitute a "family" because R.O.H. § 21-10.1 provides that "eight or fewer persons who reside in an adult residential care home … **shall** be considered a family.  Resident managers or supervisors shall not be included in this resident count." (emphasis added.)  Therefore, each Care Home constitutes a single-family dwelling for purposes of the Land Use Ordinance and zoning and seven Care Homes are permitted on the Property.

**(Senior Care Conducts Its Due Diligence to Confirm It Can Build Its Intended Project; Defendants, Improperly and Without Explanation, Deny Direct Sewer Connection, But Approve a Sewer Division)**

22.     In mid-2011, Senior Care entered into negotiations to purchase the Property from its then owner with the intent to construct the Residence Project on the Property.

10

176785/4

23.     At the time, one residential dwelling existed on the Property, as well as several accessory improvements, such as greenhouses.

24.     On or about July 1, 2011, Senior Care entered into a purchase and sale agreement for the purchase of the Property.

25.     As part of its due diligence in the purchase of the Property, Senior Care investigated whether or not it would be able to develop the Property with the Residence Project, including constructing the new Care Homes.

26.     In order to construct the new Care Homes, Senior Care is required to obtain building permits under R.O.H. Chapter 18 (the "Building Permits").  If the work and plans conform to the requirements of the Building Code (R.O.H. Chapter 16) and other pertinent laws and ordinances, and the fee is paid, the building official **shall** issue a permit.  R.O.H. § 18-5.1.  In other words, when the applicant meets the requirements, the building official has no discretion to withhold approval – the approval is ministerial.

27.     In connection with its due diligence (both before and after entering into the purchase agreement), Senior Care retained a number of professional consultants to design the Care Homes and to inquire of Permitting as to various aspects and components of the intended construction, including connecting the new Care Homes to County's wastewater/sewer system.

11

176785/4

28.    All buildings used as a dwelling must be connected to a wastewater system. *See e.g.*, Haw. Admin. R. § 11-62-06.

29.    Approval to connect a dwelling to an accessible public sewer is ministerial.

30.    A public sewer is accessible from the Property, thus Senior Care should be able to connect dwellings on the Property directly to this public sewer.

31.    Defendants should have approved such direct connections, but did not.  It has been Defendants' position that there is a purported sewer inadequacy located somewhere in the sewer system around Manoa Marketplace (roughly 0.26 miles downstream in the system from the Property).  Senior Care is informed and believes, and on that basis alleges, that there is no sewer inadequacy.  As discussed below, Defendants have failed to identify a specific inadequacy or provide Senior Care with any evidence of the purported inadequacy.

32.    In light of Permitting's assertions that there was a purported inadequacy, Senior Care's consultant, Hida, Okamoto & Associates, Inc. ("Hida"), wrote to Permitting on or around July 15, 2011 proposing a diversion sewer line at Kolowalu Street (roughly 0.38 miles downstream of the Property in the sewer alignment) to address the purported inadequacy of the current line (the "Kolowalu Diversion Plan").  At that time, Senior Care was considering constructing six Care

12

176785/4

Homes, and as such, the letter described the development as six new homes and one existing home.  In the letter, Hida stated that the developer has agreed to construct the diversion sewer line **at its cost** and would dedicate it to the City upon completion.  In the letter, Hida did not identify the developer or that the development was for an ARCH.

33.    Senior Care does not allege, admit, or concede that making this proposal was necessary to obtain approval of the Residence Project because Defendants should have permitted connections for each new Care Home directly to the County's existing sewer system (*i.e.*, without a diversion).

34.    On or about August 9, 2011, Permitting replied to Hida's July 15, 2011 letter and stated, "Your proposed development at 2649 Huapala Street **can be conditionally approved with construction of a relief sewer line near the intersection of Kolowalu Street and Woodlawn Drive as shown in your diversion sewer schematic.**  You are required to resubmit a sewer connection application form and construction plans for review and approval." (Emphasis added.)  In other words, Permitting had approved the conceptual plan and material details thereof; all that remained for permitting was the ministerial tasks of reviewing and approving the applications.

13

35.    In or around this time, Senior Care decided to scale back the proposed development from six new Care Homes and one existing home to four new Care Homes (referred to herein as buildings A, B, C and D) and one existing home (building E).

36.    On or about September 21, 2011, four Building Permit applications were submitted to Permitting for the stated owner: Senior Care (the "Building Applications"). The Building Applications were for four new single-family homes (buildings A, B, C and D).

37.    On or about September 23, 2011, Permitting's Traffic Review Branch reviewed the Building Applications and made the following comments: "[w]iden driveway pavement to a width of 20'. Also, contact and inform the abutting property owners of the proposed plans; and furnish DPP-TRB with a list of the abutting property owners contacted." After the road width was questioned by Hida, this was later modified to 18.35 feet by Permitting. Plaintiff does not allege, admit, or concede that a driveway of more than 12 feet (the minimum width for a residential flag lot access drive) was necessary.

38.    Plaintiff is informed and believes, and on that basis alleges, that Permitting does not require an applicant for single-family dwelling(s) to contact the abutting owners or provide such information to Permitting.

176785/4

39.   On approximately October 13, 2011, Hida submitted construction drawings, drainage study, erosion control plan and checklist to Permitting in connection with the Building Applications.

40.   In or around October 2011, an Industrial Wastewater Discharge Permit Survey/Application and a Site Development Division Master Application Form were submitted.  Senior Care alleges that no such wastewater permit is necessary for the proposed development.

**(Having Received Approval for a Sewer Connection, Senior Care Buys the Property; Then Defendants Renege Approval and Interject New Obstacles to Development)**

41.   After receiving this official approval from Permitting on or about August 9, 2011 and completing the other tasks as part of its due diligence, Senior Care believed that it could develop the proposed Residence Project and decided to purchase the Property.  The costs associated with the due diligence (including after Permitting approved the sewer connection) included, without limitation, payments for architectural, engineering and site services, in amounts to be proven at trial.

42.   On or about November 7, 2011 (over three months after receiving Permitting's sewer approval and in reliance thereof) Senior Care purchased the Property for $3,350,000.00.

15

176785/4

43.     On or about November 14, 2011, Permitting issued a demolition permit for small various accessory structures on the Property.

44.     On or about December 27, 2011, Permitting issued foundation permits for all four new Care Homes.

45.     Again, in reliance upon the August 9, 2011 DPP approval letter and now the issuance of the foundation and demolition permits, Senior Care immediately proceeded to construct foundations at a cost of over $300,000.00 (the exact amount to be proven at trial).

46.     However, on or about March 2, 2012, Permitting's Wastewater Branch states in an electronic mail to Hida that "[t] he Dept of Environmental Services, Collection Systems Maintenance had concerns with the proposed sewer diversion for this project.  There are defects in the downstream sewer lines and diverting more flows may cause additional problems, **so concept will need to be revised**." (Emphasis added.)

47.     To recap, **for nearly seven months**, Senior Care proceeded with purchasing the Property and developing the Residence Project, all in reliance upon Permitting's sewer approval and other permit approvals and incurring significant cost in association therewith, in amounts to be proven at trial.

16

48.     Senior Care is informed and believes, and on this basis alleges, that in and around this time, Defendants (or some of them) received complaints from the owners of neighboring properties, including without limitation: allegations that Senior Care failed to obtain a Conditional Use Permit (which Senior Care does not need for this development); allegations that the traffic associated with the Residence Project would risk the safety of children who (illegally) play in the public street; complaints of rubble/rock piles located on the Property; and allegations that there was a heiau (ancient Hawaiian temple or ceremony site) situated on the Property (even though surveys and County inspections discovered no evidence of such a heiau).

49.     Senior Care is informed and believes, and on this basis alleges, that these complaints and allegations from Defendants' constituents motivated some or all of the decisions, actions, and/or omissions of the Defendants complained of herein, as well as numerous unannounced inspections by various County officials and employees throughout the development process (not in the regular court of business for such officials and employees).

**(Having Received No Explanation for Sewer Connection Denial, Senior Care, Inter Alia, Offers to Construct Holdings Tanks on the Property and Also Requests Reasonable Accommodations; Defendants Reject the Holding Tanks; Accommodations Are Denied or Prove Impossible for Senior Care)**

50.     In response to the March 2, 2012 e-mail, Senior Care immediately sent the County's Corporation Counsel and Permitting a letter dated March 2, 2012

176785/4

requesting issuance of the permits for the four new Care Homes and, citing the FHA, further requested Defendants to make reasonable accommodations in their rules, policies, practices, or services and process and issue the permits to Senior Care.

51.     Shortly thereafter, Hida submitted a new Sewer Connection Application dated April 9, 2012 with a different diversion plan at Keama Place (roughly 0.3 miles downstream of the Property along the sewer alignment) (the "Keama Diversion Plan") to address the purported (but still unsubstantiated) sewer inadequacy and reneged approval.  Senior Care does not allege, admit, or concede that this later application (or the Keama Diversion Plan) was necessary for Permitting to approve the permits for the Residence Project.

52.     Thereafter, the April 9, 2012 Sewer Connection Application (the Keama Diversion Plan) was "[a]pproved with conditions".   The remarks state: "[r]equires a new diversion line from the intersection of E. Manoa and Keama Pl. and the existing SMH at the easement near Keama Pl.  Submit construction plans for review and approval."  This plan would require Senior Care to obtain an easement under privately owned property.  In other words, the only plan Defendants were considering at this time for Senior Care to connect to the sewer service provided by the County was through a private sewer on a third-party's private party (which necessarily required such private party's consent and approval).

18

53.    Senior Care has been unable to obtain from the private property owners the easement needed for sewer connection called for under the Keama Diversion Plan.

54.    In a letter dated May 8, 2012, in response to Senior Care's Park Dedication application for the development of the four Care Homes under the provisions of R.O.H. § 21-8.20A (entitled "Housing – Multiple dwelling units on a single residential district zoning lot"); Permitting approved the payment of park dedication fees of $67,200 by Senior Care.  Senior Care does not allege, admit, or concede that such exactions were necessary or reasonable.

55.    After extensive negotiations between Senior Care, its counsel, Corporation Counsel and certain of Defendants and its employees, on or about approximately May 21, 2012, a Grading Permit for Building A is issued.

56.    The next day and again, after a meeting between Permitting, Corporation Counsel, and Senior Care's attorney, a Building Permit was issued for Building A, but only for Building A.

57.    Because Senior Care could not obtain the easements called for under the Keama Diversion Plan, Senior Care yet again attempted to come up with an alternate solution for the purported sewer inadequacy (despite being entitled to a direct sewer connection).

19

58.     Senior Care's project engineer in a letter dated June 20, 2012, requested the use of on-site holding tank systems (flow equalization systems) for each new Care Home to regulate and release sewage flows to the existing sewer system during off-peak hours (the "Holding Tank Plan"). The plan called for Senior Care to bear the expense to install and maintain the holding tanks and for the system to be accommodated entirely on the Property without disturbing other area residents or their properties.

59.     In a letter dated July 6, 2012, Permitting rejected the Holding Tank Plan and again alleged sewer inadequacy, stating that the "request is not approved due to the Department of Environmental Services, Collection System Maintenance records that include at least five trouble calls spanning back to 2003 in the vicinity of this line." This rejection was confirmed repeatedly and most recently by Defendants in October 2012.

60.     The Holding Tank Plan was rejected despite the fact that Defendants permit holding tanks for residential projects in areas where the sewer system is inadequate and that there exists a written policy stating that "[s]ewage holding tanks may be considered as an alternate method of servicing residential projects in areas where the sewer system is inadequate."

176785/4

61.    Defendants had no discretion to deny the ministerial permit for the Holding Tank Plan and have failed to provide any cogent explanation for this denial.

**(Senior Care Faces Additional Obstacles to Developing the Residence Project)**

62.    After numerous correspondences and despite Senior Care's position that the Care Homes are single family residences and that Defendants must provide reasonable accommodations to allow for the construction of the new Care Homes, Defendants confirm in October 2012 that Senior Care is required to pretreat its wastewaters with a grease interceptor.  Defendants have claimed that the Residence Project is subject to certain rules promulgated by Environmental Services regarding prevention of certain prevent discharge of fats, oils and grease into the County's sewer system.

63.    Grease interceptors are not required for the Care Homes because, *inter alia*, grease interceptors are not required for residential homes.  Regardless, Senior Care has repeatedly requested an accommodation from this request, *inter alia*, by asking that the new Care Homes be treated as single-family dwellings.

64.    In addition to the grease interceptors and contrary to residential development requirements, Defendants were and/or are of the opinion that Senior Care is required, *inter alia*, to undertake the following to develop the Residence Project: (1) inform the abutting property owners of the proposed plans; (2) provide an affidavit

21

with respect to the intend use of the Property for an ARCH; (3) place sprinklers and commercial conduit wiring in the structures (not required in residential construction); (4) apply a setback on the back and side yards for each Care Home of ten feet each instead of the five feet required of residences; (5) widen the driveway pavement to a width of 18.35 feet; and (6) install a storm water storage and drainage systems.  Senior Care alleges that none of these conditions should be applied to the Residence Project and to the extent they are, Senior Care is entitled to a reasonable accommodation therefrom (to meet the standards applicable to single-family dwellings).

65.    Further, in a letter dated October 5, 2012 but not received until on or about October 11, 2012, Permitting claimed that the required capacity for Senior Care's Residence Project (with the four Care Homes and the one existing building) would be 20,000 gallons **higher** per day than would Senior Care's original planned development (with a total of seven single-family dwellings).  Permitting provided no support for this calculation and has provided no support as of the date of filing this Complaint.

66.    Senior Care is informed and believes, and on that basis alleges, that each of the Care Homes would produce significantly less sewage than as calculated in the October 5, 2012 letter – each using an average of roughly 800 gallons per day.

176785/4

67.     On or about October 12, 2012, Senior Care's counsel delivered to Defendants a proposed sewerage improvement for the Property which provided the specific plans and details for the Holding Tank Plan and support for the fact that senior care homes of this same size and type use on average approximately 800 gallons of water per day.

**(Defendants Continue to Withhold Permits and Sewer Connection)**

68.     Despite Senior Care's entitlement to a direct sewer connection and the Building Permits and its substantial efforts to advance several proposals and alternatives to obtain Defendants' approval for wastewater removal (to address Defendants' vague and unsubstantiated claims of a purported sewer inadequacy), Defendants have neglected and/or refused to give such approval.

69.     And despite Senior Care offering numerous alternatives (beyond what was reasonable and necessary), Defendants have refused to permit wastewater removal by way of a direct sewage connection, a diversion (having reneged on their earlier approval of such diversion), construction of a relief sewer line and holding tanks and have otherwise refused and/or neglected to make any reasonable sewerage accommodation.

70.     After **more than 19 months** and countless requests, meetings, correspondence, and communications, Defendants have yet to provide Senior Care

176785/4

23

with any proof of the purported inadequacy in the sewer line.  Nor have they given any cogent explanation why any purported inadequacy bars Senior Care from connecting the Care Homes to the sewer line.

71.     Indeed, Defendants have offered contradictory explanations of their own policies and/or decisions in attempting to justify their refusal to allow holding tanks, direct connection, the previously approved (then reneged) diversion or otherwise make a reasonable accommodation as to the sewer connection, and amongst themselves have questioned the validity of the proffered reasons for such refusals.

72.     For example, during the meeting between Senior Care, certain of its consultants and its counsel, Corporation Counsel, Permitting Director, and representatives of Permitting and Environmental Services on or around October 1, 2012 (the "October 2012 Meeting"), Permitting representatives at one point stated that no new connections were being allowed in Manoa (effectively, an unwritten moratorium was in place), yet later they admitted that some connections were still being permitted.

73.     Permitting also have cited a Permitting policy that Permitting would allow only one sewer connection per lot, but (despite repeated requests) have been unable to produce an written evidence of such a policy.

24

176785/4

74.    In other words, Defendants have made only unsupported, disingenuous excuses for not allowing the sewer connections.

75.    Senior Care is informed and believes, and on that basis alleges, that Defendants have permitted new sewer connections in Manoa for new developments in and around the time Senior Care sought such approvals, including without limitation single-family dwellings.

76.    Because Senior Care continues to suffer damages from delays in the construction (in amounts to be proven at trial), Senior Care's counsel asked at the October 2012 Meeting whether or not Defendants would issue building permits for the three remaining Care Homes while the parties attempted to resolve the sewer connection; Permitting Director responded that "we won't allow you to build anything" that will make the sewer "situation" worse.

77.    As a direct and proximate result of this refusal, Senior Care has been unable to secure building permits for three of the New Homes or sewer connections for any of the new Care Homes, Senior Care cannot open the Residence Project, and Doe Residents cannot live at this group home and have no other opportunity to live in the community of their choice -- Manoa.

78.    Senior Care is entitled to a direct connection and approval of a sewer connection (or, if an actual inadequacy resulting from the Residence Project

176785/4

exists, approval of a reasonable and feasible holding tank system or a diversion plan) is necessary and reasonable in order to afford the elderly handicapped equal opportunity to use and enjoy a dwelling in Manoa.

79.     The development and operation of elderly residential care homes are reasonable and necessary to afford disabled people equal opportunity to use and enjoy housing.  Specifically, Senior Care is informed and believes, and on that basis alleges, that there is a specific need and desire by potential residents (including the Doe Residents) for additional housing opportunities in Manoa.

## CAUSE OF ACTION ONE
## INJUNCTION RELIEF-MANDAMUS TO APPROVE
## DIRECT SEWER CONNECTION AND ISSUE PERMITS

80.     Senior Care incorporates by reference allegations contained in Paragraphs 1 through 79, above.

81.     All buildings used as a dwelling must be connected to a wastewater system.  *See e.g.*, Haw. Admin. R. § 11-62-06.

82.     A permit for a dwelling to connect to an accessible public sewer is ministerial – Defendants have no discretion in issuing the permit.

83.     Where a public sewer is accessible, the only reason connection can be denied is an inadequacy to accommodate additional sewage resulting from the connecting dwelling.

26

176785/4

84.     A public sewer is accessible from the Property.

85.     Defendants cannot bar direct sewer connections to the Residence Project by making bald and vague assertions as to a purported sewer inadequacy.

86.     Defendants have provided no evidence to suggest that there is an actual inadequacy in this sewer line and/or that an actual inadequacy is due to the Residence Project.

87.     Senior Care is informed and believes, and on that basis alleges, that there is no inadequacy in this public sewer.

88.     Defendants have no discretion to deny the direct connection and are required to provide Senior Care with direct connections for the existing dwelling and Care Homes, but have failed to do so.

89.     Senior Care is entitled to a mandatory injunction ordering Defendants to approve the permit to make direct connections to the public sewer for the existing dwelling and the Care Homes and issue all official documents necessary to evidence and/or effectuate such approval.

90.     Senior Care is likewise entitled to a mandatory injunction ordering Defendants to issue the Building Permits.

176785/4

## CAUSE OF ACTION TWO
## INJUNCTION RELIEF-MANDAMUS TO APPROVE
## HOLDING TANK PLAN AND ISSUE PERMITS

91.     Senior Care incorporates by reference allegations contained in Paragraphs 1 through 90, above.

92.     Senior Care brings Cause of Action Two as an alternative claim if the Court does not grant Senior Care relief under Cause of Action One.

93.     Where there is an actual inadequacy in the public sewer resulting from the connecting dwelling(s), connection will be permitted when the inadequacy is relieved either by the County or the applicant at the applicant's own expense. *See e.g.*, R.O.H. § 14-1.6.

94.     Senior Care has provided Defendants with the Holding Tank Plan to account for the theoretical possibility of an actual inadequacy, which plan would address any potential inadequacy in the public sewer system during the peak flow period – releasing the wastewater for the Residence Project at off-peak hours.

95.     Defendants' policy is to approve holding tanks, such as those proposed in the Holding Tank Plan, to address sewer inadequacies.

96.     Approval of a holding tank permit is ministerial – Defendants have no discretion to withhold approval.

176785/4

97.     If the Court does not grant Senior Care relief under Cause of Action One and finds that there is an actual inadequacy resulting from the Residence Project, Senior Care is entitled to a mandatory injunction ordering Defendants to approve the permit for the Holding Tank Plan and issue all official documents necessary to evidence and/or effectuate such approval.

98.     Senior Care is likewise entitled to a mandatory injunction ordering Defendants to issue the Building Permits.

## CAUSE OF ACTION THREE
## ESTOPPEL AND VESTED RIGHTS

99.     Senior Care incorporates by reference allegations contained in Paragraphs 1 through 98, above.

100.    Senior Care brings this Cause of Action Three as an alternative claim if the Court does not grant Senior Care relief under Cause of Action One or Cause of Action Two.

101.    Senior Care was entitled to rely and actually and materially did rely on (1) existing zoning and land use laws, (2) good faith expectancy that the development will be permitted and (3) Defendants' official assurances, including but not limited to, assurances set forth in the August 9, 2011 letter, issuance of foundation and demolition permits, and issuance of building permit for Building A.

176785/4

102.   In reliance upon the official assurance(s), Senior Care, *inter alia*, proceeded to purchase the Property, proceeded to construct foundations and has incurred considerable expense which would not otherwise have been incurred, to retain architects, engineers, attorneys, and other consultants to develop the Property.

103.   Senior Care demands judgment against all Defendants, jointly and severally, for the violation of its vested rights and against all Defendants, jointly and severally, for actual, general, special, compensatory damages, in amount to be proven at trial.

104.   By virtue of these official assurances, Defendants are estopped from precluding sewer connection and/or the Kolowalu Diversion Plan, construction of the new Care Homes, and/or otherwise interfering with Senior Care's vested rights.

105.   If the Court does not grant relief to Senior Care under Causes of Action One or Two, Senior Care prays for and is entitled to (1) declaratory judgment under 28 U.S.C. § 2201 *et seq*. declaring that Defendants are estopped from interfering with Senior Care's vested rights and (2) injunctive relief ordering Defendants to provide sewer services, permit the Kolowalu Plan and issue the requested Building Permits as provided by statute.

176785/4

## CAUSE OF ACTION FOUR
## <u>VIOLATION OF FHA, ADA AND/OR REHABILITATION ACT</u>

106.   Senior Care incorporates by reference allegations contained in Paragraphs 1 through 105, above.

107.   The FHA was enacted to effect "the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States" and prevent housing discrimination on the basis of race, color, religion, sex, handicap, familial status, or national origin.  42 U.S.C. § 3601; 24 C.F.R. § 100.5.

108.   Similar policies were behind the enactment of the ADA and the Rehabilitation Act.  42 U.S.C. § 12101 (findings and purpose of the ADA) and 29 U.S.C. § 701 (findings, purpose, and policy for the Rehabilitation Act).  The ADA and Rehabilitation Act provide, *inter alia*, similar protections for the disabled with respect to housing.  *See generally* 42 U.S.C. § 12132, 29 U.S.C. § 794.

109.   Under the FHA, one cannot "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter" or to "discriminate against any person . . . **in the provision of services or facilities in connection with such dwelling**" "because of a handicap of – (A) that buyer or renter, (sic) (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (c) any person associated with that buyer or renter."  42 U.S.C. § 3604(f)(1 and 2) (emphasis added).  Discrimination includes "a **refusal to**

31

176785/4

**make reasonable accommodations** in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(b) (emphasis added).  In other words, "discrimination" under the FHA includes not only intention discrimination, but also failure to make reasonable accommodations to allow the disabled the opportunity to the housing.

110.   Specifically, prohibited conduct includes "because of race, color, religion, sex, handicap, familial status, or national origin, to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons."  24 C.F.R. § 100.70(b).  Prohibited activities include "**[r]efusing to provide municipal services** or property or hazard insurance for dwellings or providing such services or insurance differently because of race, color, religion, sex, **handicap**, familial status, or national origin."  24 C.F.R. § 100.70(d)(4) (emphasis).

111.   "Dwelling" means "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof."  42 U.S.C. § 3602(b).

176785/4

112.   "Handicap" means, with respect to a person, "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).  The same definition (for "handicap" or "disability") is found in the ADA and Rehabilitation Act.  The terms "handicap" and "disability" (and "handicapped" and "disabled") are used interchangeably in this Complaint.

113.   The FHA and ADA prohibit discrimination by federal, state, county, and municipal governments and their officers.   The Rehabilitation Act prohibits such discrimination involving any program or activity (as defined in 29 U.S.C. § 794(b)) receiving Federal financial assistance.  29 U.S.C. § 794.

114.   There is no immunity under the 11th Amendment of the U.S. Constitution for conduct prohibited under the ADA. 42 U.S.C. § 12202.  There is also no such immunity under the FHA.

115.   Any "law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under [the FHA] shall to that extent be invalid." 42 U.S.C. § 3615.

116.   It is the public policy of the State of Hawaii, as set forth in Haw. Rev. Stat. § 518-3, to establish community residences in residential areas for the

176785/4

disabled, including ARCHs, reflecting the State's commitment to the policies and goals of the FHA.

117.   Defendants knew that Senior Care was a developer and intended operator of care homes for the disabled elderly and knew or should have known that the Doe Residents are handicapped and are reasonably expected to know of it.

118.   The Care Homes and Residence Project are "dwellings" covered and protected by the FHA, ADA, and/or Rehabilitation Act.

119.   Defendants have discriminated against Senior Care and the Doe Residents in violation of the FHA, ADA and/or Rehabilitation Act and their implementing regulations by the actions and omissions described above, including without limitation:  refusing to issue building permits; undue delay in action, refusing to permit and provide municipal wastewater removal (by way of a sewage connection, a diversion, construction of a relief sewer line, holding tanks and any other sewerage accommodation); miscalculating of water usage amounts; requiring grease interceptors; requiring Senior Care to inform the abutting property owners of the proposed plans; requiring driveway width of 18.35 feet; requiring sprinklers and commercial conduit wiring in the homes; requiring installation of a storm water storage and drainage system; and requiring a setback of 10 feet.

176785/4

120.   Defendants' discrimination described above resulted from their discriminatory intent against Senior Care and the Doe Residents and/or their interpreting and applying County codes, regulations, rules, policies, practices, or services related to new construction and wastewater arbitrarily and capriciously to the Residence Property (as if it was a commercial/industrial user instead of single-family residences) and/or Defendants' refusal to make reasonable and necessary accommodations to all items cited in paragraph 119 above.

121.   Defendants by their conduct set forth above have treated Senior Care and the Doe Residents differently than they treat traditional families and/or non-disabled persons occupying single-family residences and developers constructing such residences in violation of the FHA, ADA, and/or Rehabilitation Act.

122.   Defendants by their conduct set forth above have intentionally discriminated against Senior Care and the Doe Residents and/or caused a disparate impact upon people with disabilities, including Senior Care and the Doe Residents in violation of the FHA, ADA, and/or Rehabilitation Act.

123.   Defendants have violated the FHA, ADA, and/or Rehabilitation Act by their refusal to make reasonable accommodations in rules, policies, practices, or services, including without limitation, sewer services and the other items cited in paragraph 119 above, for which such accommodations are necessary and reasonable to

35

afford Senior Care equal opportunity to use and enjoy the Property and planned Care Homes thereon and to afford Doe Residents the opportunity to live in Manoa.

124.   Defendants' apparent willingness to allow the Keama Diversion Plan is immaterial and of no benefit to Senior Care.   It **is not** a reasonable accommodation because, *inter alia*, Senior Care has been unable to obtain consent for the easements from the private property owners, Defendants have not assisted in obtaining such consent, and further attempts would be futile.   In other words, this approval will not lead to the ability of Doe Residents to reside in Manoa and thus the "accommodation" is illusory.   Defendants' approval of any other sewer diversion requiring easements over private property likewise would be illusory.

125.   Senior Care was harmed and will be further harmed, has incurred considerable expense which would not otherwise have been incurred, and incurred other damages, in amounts to be proven at trial.

126.   Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and/or in conscious disregard of Senior Care's rights.   As a direct and proximate result of the aforementioned conduct of Defendants and each of them, Senior Care has been damaged in amounts to be proven at trial and Senior Care is entitled to judgment against Defendants, and each of them, jointly and severally, for

176785/4

actual and punitive damages as provided by the ADA, FHA, and/or Rehabilitation Act, including but not limited to 42 U.S.C. § 3613.

127.   Further, Senior Care is entitled to declaratory judgment declaring that Senior Care is properly classified "residential" for all purposes of the development and construction of the Care Homes and sewer services as a reasonable accommodation under the FHA, ADA, and/or Rehabilitation Act, including without limitation 42 U.S.C. § 3613, and under 28 U.S.C. § 2201 *et seq.*

128.   Senior Care also is entitled, under the FHA, ADA, and/or the Rehabilitation Act, to a mandatory injunction ordering Defendants to provide wastewater services to the Property and to approve a permit to connect the existing dwelling and Care Homes: (1) directly to the public sewer; (2), if not directly to the public sewer, then to the public sewer by way of the Holding Tank Plan; or (3), if not directly to the public sewer or under the Holding Tank Plan, then by way of the Kolowalu Plan.

129.   Senior Care also is entitled, under the FHA, ADA, and/or Rehabilitation Act, to a mandatory injunction ordering Defendants to approve the Building Permits.

176785/4

130.   Senior Care also is entitled to reasonable attorneys' fee and costs as provided by the ADA, FHA, and/or Rehabilitation Act, including but not limited to 42 U.S.C. § 3613.

### CAUSE OF ACTION FIVE
### 42 U.S.C. § 1983

131.   Senior Care incorporates by reference allegations contained in Paragraphs 1 through 130, above.

132.   Defendants were, at all times, acting under color of state law.

133.   Defendants by their conduct set forth above have deprived Senior Care and Doe Residents, of rights, privileges or immunities secured by the Constitution and laws, including the Fourteenth Amendment of the Constitution of the United States and is therefore a violation of 42 U.S.C. § 1983 which provides, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured . . . by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

134.   Defendants' actions and omissions described above were arbitrary, capricious and irrational and thus violated Senior Care's rights under the 5th Amendment of the U.S. Constitution.

38

135.   Senior Care was harmed and will be further harmed, has incurred considerable expense which would not otherwise have been incurred, and incurred other damages, in amounts to be proven at trial.

136.   Defendants acted despicably, willfully, wantonly, oppressively, fraudulently and/or in conscious disregard of Senior Care's rights.  As a direct and proximate result of the aforementioned conduct of Defendants and each of them, Senior Care has been damaged in amounts to be proven at trial and Senior Care is entitled to judgment against Defendants, and each of them, jointly and severally, for actual and punitive damages as provided by statute.

137.   Senior Care also is entitled to declaratory judgment declaring that: (1) Defendants were acting under color of law and deprived Senior Care of its rights under the U.S. Constitution; and (2) Senior Care is properly classified "residential" for all purposes of the development and construction of the Care Homes and sewer services, as provided by statute including without limitation 28 U.S.C. § 2201 *et seq*.

138.   Senior Care also is entitled under 42 U.S.C. § 1983 to a mandatory injunction ordering Defendants to issue the Building Permits and to provide wastewater services to the Property and to approve a permit to connect the existing dwelling and Care Homes: (1) directly to the public sewer; (2), if not directly to the public sewer, then to the public sewer by way of the Holding Tank Plan; or (3), if not

176785/4

directly to the public sewer or under the Holding Tank Plan, then by way of the Kolowalu Plan.

139.   Senior Care also is entitled to reasonable attorney's fee and costs as provided by statute, including but not limited to, 42 U.S.C. § 1988.

## CAUSE OF ACTION SIX
## VIOLATION OF U.S. CONSTITUTION

140.   Senior Care incorporates by reference allegations contained in Paragraphs 1 through 139, above.

141.   Defendants were, at all times, acting under color of state law.

142.   At all relevant times herein, Senior Care had a right under the due process and equal protection clauses of the U.S. Constitution not to be deprived of its constitutionally protected interest in the Property and civil rights protected thereunder.

143.   As a direct and proximate result of Defendants' conduct alleged herein, Senior Care has been and is deprived of its rights to due process of law and the substantive guarantees of the Fifth and Fourteenth Amendments of the U.S. Constitution, which provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law. . . ."

144.   This deprivation of rights and privileges has an economic value because of the effect that the Defendants conduct has on the ability of Senior Care to use and enjoy the Property.

176785/4

145.   The legal harm and damages complained of herein are continuing in nature and, if left unabated, will cause irreparable harm to Senior Care.  Specifically, Senior Care is being deprived of the use and enjoyment of the Property as a result of the knowing, intentional, deliberate, and/or illegal conduct of the Defendants whose actions are arbitrary, capricious and irrational.

146.   Defendants will not cease their damaging behavior without judicial intervention.

147.   Senior Care has no adequate legal remedy sufficient to address the continuing and future harm being caused by Defendants.

148.   Senior Care was harmed and will be further harmed, has incurred considerable expense which would not otherwise have been incurred, and incurred other damages, in amounts to be proven at trial.

149.   Senior Care demands judgment against all Defendants, jointly and severally, for the violation of its constitutional and civil rights and against all Defendants, jointly and severally, for actual, general, special, and/or compensatory damages, in amount to be proven at trial.

150.   Senior Care also is entitled to declaratory judgment declaring that: (1) Defendants were acting under color of law and deprived Senior Care of its rights under the U.S. Constitution; and (2) Senior Care is properly classified "residential" for

176785/4

all purposes of the development and construction of the Care Homes and sewer services, as provided by statute, including without limitation, 28 U.S.C. § 2201 *et seq.*

151.   Senior Care also is entitled to a mandatory injunction ordering Defendants to approve the Building Permits and to provide wastewater services to the Property and to approve a permit to connect the existing dwelling and Care Homes: (1) directly to the public sewer; (2), if not directly to the public sewer, then to the public sewer by way of the Holding Tank Plan; or (3), if not directly to the public sewer or under the Holding Tank Plan, then by way of the Kolowalu Plan.

## CAUSE OF ACTION SEVEN
## <u>VIOLATION OF HAWAII CONSTITUTION</u>

152.   Senior Care incorporates by reference allegations contained in Paragraphs 1 through 151, above.

153.   Defendants were, at all times, acting under color of state law.

154.   At all relevant times herein, Senior Care had a right under the due process and equal protection clauses of the Constitution of the State of Hawaii ("Hawaii Constitution") not to be deprived of its constitutionally protected interest in the Property and civil rights protected thereunder.

155.   As a direct and proximate result of Defendants' conduct alleged herein, Senior Care has been and is deprived of its rights to due process of law and the substantive guarantees of Article I, section 5 of the Hawaii Constitution, which

42

provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law. . . ."

156.   This deprivation of rights and privileges has an economic value because of the effect that the Defendants conduct has on the ability of Senior Care to use and enjoy the Property.

157.   The legal harm and damages complained of herein are continuing in nature and, if left unabated, will cause irreparable harm to Senior Care.  Specifically, Senior Care is being deprived of the use and enjoyment of the Property as a result of the knowing, intentional, deliberate, and/or illegal conduct of the Defendants whose actions are arbitrary, capricious and irrational.

158.   Defendants will not cease their damaging behavior without judicial intervention.

159.   Senior Care has no adequate legal remedy sufficient to address the continuing and future harm being caused by Defendants.

160.   Senior Care was harmed and will be further harmed, has incurred considerable expense which would not otherwise have been incurred, and incurred other damages, in amounts to be proven at trial.

161.   Senior Care demands judgment against all Defendants, jointly and severally, for the violation of its constitutional and civil rights and against all

Defendants, jointly and severally, for actual, general, special, and/or compensatory damages, in amount to be proven at trial.

162.   Senior Care also is entitled to declaratory judgment declaring that: (1) Defendants deprived Senior Care of its rights under the Hawaii Constitution; and (2) Senior Care is properly classified "residential" for all purposes of the development and construction of the Care Homes and sewer services, as provided by statute, including without limitation, 28 U.S.C. § 2201 *et seq*.

163.   Senior Care also is entitled to a mandatory injunction ordering Defendants to approve the Building Permits and to provide wastewater services to the Property and to approve a permit to connect the existing dwelling and Care Homes: (1) directly to the public sewer; (2), if not directly to the public sewer, then to the public sewer by way of the Holding Tank Plan; or (3), if not directly to the public sewer or under the Holding Tank Plan, then by way of the Kolowalu Plan.

## CAUSE OF ACTION EIGHT
## INVERSE CONDEMNATION

164.   Senior Care incorporates by reference allegations contained in Paragraphs 1 through 163, above.

165.   Defendants' conduct alleged herein, including but not limited to, refusing to issue the Building Permits and refusing to permit wastewater removal has

44

176785/4

deprived Senior Care the right to use and enjoy the Property and constitutes a taking and/or inverse condemnation, without just compensation.

166.   Defendants acted intentionally, willfully, knowingly and/or in conscious disregard of Senior Care's rights.  As a direct and proximate result of the aforementioned conduct of Defendants and each of them, Senior Care has been damaged in amounts to be proven at trial and Senior Care is entitled to judgment against all Defendants, jointly and severally, for actual, general, special, compensatory damages, in amount to be proven at trial, and/or judgment that the offending regulation, policy, and/or decision be invalidated.

WHEREFORE, Plaintiff prays for relief as follows and for judgment against all Defendants herein, jointly and severally:

A.   For general, special and consequential damages according to proof;

B.   For exemplary damages according to proof;

C.   For reasonable attorney's fees and costs and expenses of litigation according to proof;

D.   For a judicial determination that the Defendants' acts, laws, codes, regulations, rules, policies and/or practices complained of herein are in violation of the Plaintiffs' rights as secured by the foregoing federal and state laws and regulations;

45

E.     For a judicial determination that the Residence Project be classified as "residential" for all purposes of the development and construction of the Care Homes and sewer services and for determining sewage usage charges as a reasonable and necessary accommodation;

F.     For a judicial determination that Defendants were, at all times, acting under color of state law and deprived Senior Care of its rights under the U.S. Constitution and/or the Hawaii Constitution;

G.     For a judicial determination that the offending regulation, policy, and/or decision working a taking of the Property is invalid;

H.     For appropriate injunctive relief, including but not limited to:

i.     Ordering Defendants to approve the Building Permits;

ii.     Ordering Defendants to approve the permit to provide wastewater service to the existing dwelling and Care Homes to the public sewer, and issue all necessary official documents to effect and/or evidence such approval, by connection (1) directly to the public sewer; (2), if not directly to the public sewer, then to the public sewer by way of the Holding Tank Plan; or (3), if not directly to the public sewer or under the Holding Tank Plan, then by way of the Kolowalu Plan;

I.     Prejudgment interest and post-judgment as allowed by law; and

46

J.     For such other and further relief as the Court may deem just and proper.

DATED:  Honolulu, Hawaii, October 31, 2012.

DAMON KEY LEONG KUPCHAK HASTERT

_____
KENNETH R. KUPCHAK
BETHANY C.K. ACE

Attorneys for Plaintiff
HUAPALA SENIOR CARE E, LLC

47